IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOFIA VIVIANA MENDOZA,

        Plaintiff,

v.                                                                                                              CIV 12-0781 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.[1]

# **MEMORANDUM OPINION & ORDER**

Plaintiff's mother initiated proceedings with the Administration[2] to secure Supplemental Security Income benefits for her daughter, who was diagnosed with post-traumatic distress disorder and depression when she was a young teen. *See* Doc. 19 at 4. After a hearing where Plaintiff and her mother testified, Administrative Law Judge ("ALJ") Ben Willner denied benefits, the Appeals Council denied a request for review, and this appeal followed.[3] Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the

---

[1] Commissioner Astrue's term expired on January 19, 2013.  *See* www.socialsecurity.gov. That fact will not delay disposition.  Rule 25 provides that actions do not abate under these circumstances and authorizes the Court to automatically substitute the new Commissioner once he or she is appointed.  *See* Fed. R. Civ. P. 25(d).

[2] Documents 16-1 through 16-8 and 17-1 through 17-4 comprise the sealed Administrative Record ("*Record*").  The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

[3]  Plaintiff's mother is also named Sofia Mendoza.  *See, e.g., Record* at 27, 28.  The claimant, born November 11, 1992, was a minor when her mother filed the application for benefits in August 2008.  *See id.* at 12.  He issued his decision, which appears at pages 9 through 22 of the Record, on November 10, 2010, the day before the claimant turned eighteen.  *See id.* at 22;

parties have consented to have me serve as the presiding judge and enter final judgment.  *See Docs. 4, 6.*

The general inquiry is whether ALJ Willner applied the correct legal standards, and whether his decision is supported by substantial evidence.  A deficiency in either area is grounds for remand.  *See, e.g., Keyes-Zachary v. Astrue,* 695 F. 3d 1156, 1161 (10th Cir. 2012); *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010); *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004).  Having carefully reviewed the parties' positions and the material portions of the Record, the Court grants the motion and remands the matter to the Administration for further proceedings.

### *Evaluation In Disability Cases Involving Children*

Because this application involves a child, different sequential evaluation steps and standards apply.  The Court recently reviewed these child-specific standards in detail, and the parties agree on them.  *See Apodaca v. Astrue,* CIV 12-0402 KBM (Doc. 24, filed 1/3/13); *Baca v. Astrue,* CIV 10-1189 KBM/LFG (Doc. 23, filed 9/30/11); *see also Doc. 19* at 2-4; *Doc. 20* at 3.  The Court therefore incorporates those general discussions by reference, and notes that this case involves the final step of the three-part inquiry, and whether the child's impairments "functionally equal a listing."  *See Doc. 19* at 4.

Plaintiff makes the equivalency showing if the impairments, alone or in combination, "resulted in marked limitations in two domains of functioning or an 'extreme' limitation in one domain."  *Adams ex rel. D.J.W. v. Astrue,* 659 F.3d 1297,

---

*Doc. 19* at 4, n.1. The administrative appeal and this action are brought in the Claimant's name only.  *See Record* at 1; *see also Doc. 1.*

1299 (10th Cir. 2011) (internal quotations omitted) (quoting 20 C.F.R. § 416.926a(a)); *see also id.* at 1302.  The six possible "domains" are:  "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being." *Huffman ex. rel. B.H. v. Astrue,* 290 F. App'x 87, 89 (10th Cir. 2008) (citing 20 C.F.R. § 416.926a(b)(1)(i)-(vi)).   A limitation is "marked" when it

> interferes seriously with your ability to independently initiate, sustain, or complete activities.  Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities.  "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2).

Plaintiff takes issue with ALJ Willner's findings in four of the six domains, arguing that the committed legal errors and/or his findings were not supported by substantial evidence.  The ALJ based his findings in each domain primarily on the information provided by Plaintiff's mother.  (Throughout his opinion, ALJ Willner refers to the daughter as "the claimant" and the mother as "claimant's mother".)  The Court disagrees with Plaintiff's interpretation of the credibility portion of the ALJ's decision, but that does not insulate the matter from remand.

### *ALJ's Comprehensive Discussion Of Evidence & Specific Credibility Findings*

At the outset of his opinion, ALJ Willner observed that "whenever statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record."

*Record* at 12.  Plaintiff does not challenge that this is requisite analysis, and it is set forth in Ruling 96-7p, the policy governing "Evaluation of Symptoms In Disability Claims: Assessing The Credibility Of An Individual's Statements."  This policy covers both statements by Plaintiff and her mother.  *See* Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4) ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements **by the individual and other persons** concerning the individual's symptoms.  The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.") (emphasis added).  Contrary to Plaintiff's arguments, the ALJ in fact made credibility determinations.  Before discussing them, another argument by Plaintiff is pertinent.

In one domain, Plaintiff faults the ALJ for "not referencing a single medical record when he discussed this domain."  *Doc. 19* at 7.  This takes the ALJ's discussion out of context of the entire opinion.  The ALJ discussed the medical evidence in detail.  It spans the course of several years, starting with Plaintiff's diagnosis and treatment of PTSD and depression, followed soon thereafter with a pregnancy and successful delivery, followed by continued medication and therapy for her complaints of anxiety, depression, and sleeplessness, and testing for her complaints of headaches.  These records reveal two instances of noncompliance with prescribed therapy and her medication, and the additional post-partum stressor of her child's absent biological father.  *See Record* at 14-16.[4]

---

[4] *See, e.g., Record* at 14 (February 2008 "no shows and cancellations" for physical therapy); id. at 14-15 (instructed to taper Zoloft ingestion during pregnancy); *id.* at 15 (post-partum complaints of pain, weepiness, anxiousness, irritability, and sleep disturbance due to breathing problems through nose, treated with Zoloft, Depakote, and Hydrozyzine; MRI at this time "was

ALJ Willner concluded this medical evidence "suggests that medications have been relatively effective in controlling [her] symptoms" and that "the claimant has not been entirely compliant in prescribe treatment . . . suggest that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." *Id.* at 17. Plaintiff takes no issue with the accuracy of ALJ's discussion of the medical record, or the conclusion he drew about the efficacy of her medical care from them, or the conclusion about Plaintiff's credibility that he drew from them. Instead, she only challenges his limited discussion of medical evidence in connection with one of the domains. *See Doc. 19* at 17-19.

Plaintiff asserts that the "ALJ . . . failed to make a finding regarding the credibility of Miss Mendoza's **mother's** testimony," arguing that when a child "is unable to adequately describe their symptoms, the ALJ must accept" the mother's testimony. *Doc. 19* at 9; *see also Doc. 21* at 2. The record and law do not support any of these points. Foremost, the transcript wholly belies the suggestion that the then-seventeen-year-old Plaintiff was unable to describe her symptoms. Not only did she do so, but the ALJ recounted that testimony in detail. *See Record* at 13-14; *see also id.* at 25, 51-65 (Plaintiff's testimony in response to questions by ALJ and her attorney, "Phyllis Martone"). Equally significant, as noted in the preceding paragraph, the ALJ noted that he found Plaintiff not fully credible, and the substance of that **credibility** finding is unchallenged here.

---

found to be unremarkable" and impression was Plaintiff had a deviated septum or "turbinate hypertrophy"); *id.* at 15-16 (in May 2009, when Plaintiff reported she was not bonding with her baby and leaving his care to her mother, Plaintiff's medications increased with instructions to receive psychiatric care); *id.* at 16 (by March 2010, Plaintiff' depression improved and neurologist EEG testing for continued complaints of headaches proved normal; additional drugs and vitamins prescribed and Plaintiff showed some improvement with headaches and tolerating drugs well).

In addition, the ALJ specifically and expressly made a credibility determination after his discussion of the testimony by both Plaintiff and her mother. *See id.* at 12-14. His global credibility finding clearly encompasses both of them and provides in full:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and, **the statements** concerning the intensity, persistence and liming effects of the claimant's symptoms **are credible to the extent** they are consistent with the finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below.

*Id.* at 14 (emphasis added). ALJ Willner therefore also did not find the mother's "statements" fully credible. Again, Plaintiff does not argue with the substance of this **credibility** finding.

Plaintiff's mother provided three sources of statements – her testimony and two "Functional Reports" (one she completed herself and a later one she completed with the assistance of the Martone law firm). *See id.* at 33-51 (mother's testimony); *id.* at 130-37 (mother's first report, Exhibit 2E); *id.* at 168-77 (mother's counseled report, Exhibit 8E). ALJ Willner cited the mother's first report and testimony in his discussion of three of the four domains Plaintiff challenges. He does not cite the counseled report. They differ slightly. *See id.* at 18, 19, 21; *see also* Doc. 19 at 5, 10, 14.

By faulting the ALJ for "picking and choosing" evidence from the various responses on the mother's report, throughout her motion Plaintiff suggests that crediting only part of the mother's testimony constitutes legal error. *See, e.g., Doc. 19* at 7, 12, 16. Neither the cases she cites nor controlling law stands for that proposition. The very Ruling ALJ Willner cited at the outset, and mentioned above, provides that an "ALJ [i]s

not required to 'totally accept or totally reject' [a claimant's or other lay witness's] statements." *Martinez v. Astrue,* 422 F. App'x 719, 728 (10th Cir. 2011) (citing Ruling 96-7p, 1996 WL 374186, at *4). Instead, it is perfectly acceptable, after "a consideration of all of the evidence in the case record," for an ALJ to "find all, only some, or none of an individual's allegations to be credible [and] find an individual's statements, such as statements about the extent of functional limitations . . . to be credible to a certain degree." 1996 WL 374186, at *4. As recently observed by a District Court in this Circuit:

> Plaintiff must understand that the operative word in SSR 96–7p is "consider[ ]." In arriving at a credibility determination, the ALJ need only consider explanations provided by the claimant. The ALJ need not consider *and* accept as conclusive the claimant's explanations. Further, as the court has already noted, findings of credibility are "peculiarly the province of the finder of fact," and such determinations will not be upset when supported by substantial evidence.

*Clough v. Astrue,* Civil No. 1:11–CV–00082–BSJ, 2012 WL 2224197, at *9 (D. Utah Jun. 14, 2012) (emphasis original) (quoting, respectively, 1996 WL 374186, at *7, and *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

An ALJ can err in a credibility determination when he or she "selectively use[s] portions of a [medical] opinion" as the sole basis for a credibility decision, and one of the decisions Plaintiff cites does stand for that proposition. *See, e.g., Martinez,* 422 F. App'x at 728 (quoting *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir. 2004)) (ALJ is not "entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"). However, neither decision to which Plaintiff cites stands for the proposition that an ALJ errs in rejecting part of an individual's statement, where, as here, the ALJ in fact made credibility findings and Plaintiff does

not challenge them.  *See Hamlin,* 365 F.3d at 1219 (in treating physician analysis section noting that and "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability," but not making same observation in credibility analysis section); *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (since it was "improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence," the ALJ's credibility finding that "rest[ed] entirely on . . . a lack of objective medical tests" was not supported by substantial evidence).

### *The ALJ's Citation Of The Mother's Evidence Is Utterly Disconnected From The Transcript And Functional Reports*

Plaintiff does not challenge the ALJ's findings in the domains that establish she has the intellectual capacity and physical capacity to work.  *See Record* at 18-20.  Indeed, a law firm where Plaintiff worked for three months through a "Work Force" program offered her full-time employment.  Once she reached the "maximum hours" under that program, she declined to continue, due to headaches that caused her to miss work once or twice a week, and because she did not want to be around people and wanted to focus on her son and getting "better."  *See Record* at 13-14 (Plaintiff's and mother's testimony on this point).

In three of the remaining four challenged domains, ALJ Willner concluded Plaintiff had "less than marked limitation[s]" based on one of the mother's reports and/or testimony that he found established her daughter is able to:

- work at law firm answering phones and filing
- work on arts and craft projects
- keep busy on her own

- finish things she starts
- complete homework, and complete it on time
- complete chores most of the time
- play and care for her son
- tend to her personal needs and hygiene
- cook, do laundry, and help around the house
- deliver phone messages
- repeat stories she had heard
- tell jokes or riddles accurately
- talk with friends
- run, dance, swim, ride a bike, throw a ball, jump rope, play sports
- drive a car, and
- watch television, go shopping, to lunch, to Wal-Mart, on trips, and/or to church and enjoy all of these activities.

*See Record* at 18, 19, 20-21.[5]  The problem is that these bulleted observations are utterly disconnected, and in some cases diametrically opposed, to the mother's reports and testimony.

For example, in the functional report that she completed with the assistance of the firm, Plaintiff's mother indicates that:

(1) the baby is the cause of her daughter's limited daily activities, *id.* at 172;

(2) her daughter cannot communicate by delivering phone messages, repeating stories, or telling jokes and riddles, talking with family or friends because she is "withdrawn," not motivated," "isolated," and "forgetful," busy with the baby and sleeping, *id.* at 172;

---

[5]  If these points mean to reflect that ALJ Willner credited certain testimony over the mother' functional report answers, then the evidence above is unquestionably "substantial."  Plaintiff, for example, makes no argument why these abilities would not fit the definition of a "marked impairment," or how they are equivalent to the specific "marked" and "extreme" examples limitations the ALJ noted the regulations list for each domain.  *See, e.g., Bussell v. Astrue,* 463 F. App'x 779, 781 (10th Cir. 2012). ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . .  To determine whether substantial evidence supports the Commissioner's decision, we examine the record as a whole, but we do not reweigh the evidence.") (internal quotations and citations omitted).  Thus, even without the additional evidence by the state agency physicians that Plaintiff's considers to be a "post hoc" rationale by the Commissioner, *see Doc. 21* at 3-4, substantial evidence would support the ALJ's determination.

(3) her daughter cannot read, understand, and do math because she is "forgetful" and cannot "focus," *id.* at 173;

(4) her daughter cannot ride a bike play sports, run, dance, play sports or video games because of "lack of interest," *id.* at 173-74;

(5) her daughter has no friends, *id.* at 174;

(6) her daughter cannot help with housework, take medication, use public transportation or accept criticism, *id.* at 175; and

(7) her daughter cannot work on arts and crafts, keep busy on her own, or finish projects because of lack of interest and motivation, *id.* at 176.

If ALJ Willner intended to use the hearing to clarify the mother's functional report responses, he did not ask questions along those lines. Nor does his opinion explain the stark discrepancies between what he credited her with indicating in the report and what actually exists there, regardless of which report is used. If ALJ Willner is reading the report responses differently than the plain language of the questions seems to indicate, then he did not clarify that during the hearing or in his opinion. As the Court reads the form, the mother's response "yes" that there are limitations, followed with "no" responses to specific questions about what the child can do, means those are the child's limitations in the mother's view.

This Court's last social security case also involved a decision from ALJ Willner where the body of his opinion did not meaningfully support a "to the extent of" credibility finding. Under the same authorities cited there, and notwithstanding that Plaintiff does not challenge the substance of the credibility findings here, the Court cannot accept a credibility finding that the mother's statements are partially credible to extent they are consistent with the remainder of an opinion, where that opinion is unsupportable and unexplained. *See Apodaca v. Astrue,* CIV 12-402 (Doc. 24 at 5) (citing *Briggs ex rel.*

*Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Without explanation, the ALJ passed over significant probative record evidence and deemed crucial testimony incredible. These errors are fatal.")); *see also id.* (citing *Smith ex rel. E.S.D. v. Barnhart,* 157 F. App'x 57, 61-62 (10th Cir. 2005); *Porter ex rel. B.T.P. v. Astrue,* No. CIV.A. 11-2077-KHV, 2012 WL 1190785, at *3 & n.4 (D. Kan. Apr. 9, 2012)). Similar to the situation in *Apodaca,* the remainder of ALJ Willner's opinion renders his credibility finding essentially conclusory, and of the same sort condemned in *Smith* and *Briggs.* This error alone is grounds for remand and the Court need not address Plaintiff's other arguments concerning the last challenged domain. *See id.* at 6.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 19)* is **granted** and this matter **remanded** to the Commissioner for further proceedings.

**IT IS FURTHER ORDERED** that a final order enter concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE